**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

**WILLIAM R. CATHEY,**

**Plaintiff,**

**v.**

**LEISHA VON EVERETT, et al.,**

**Defendants.**

**Case No. 23-CV-207-JFH-GLJ**

**OPINION AND ORDER**

William R. Cathey ("Cathey"), a self-represented litigant, brings this action under 42 U.S.C. § 1983, claiming constitutional deprivations while imprisoned at the Oklahoma State Penitentiary. Dkt. No. 23. Generally, Cathey claims that Defendants Leisha von Everett, Kim Hall, Bruce Sharp, Cheri Atkinson and Corder were deliberately indifferent to his medical needs and retaliated against him. *See id.* The Defendants moved to dismiss Cathey's Second Amended Complaint, under Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 57. For the following reasons, the Court denies, in part, and grants, in part, the Defendants' Motion to Dismiss ("Motion").

**I. Procedural Posture**

On July 17, 2024, the Court granted Defendants' Motion to Stay Proceedings and Request for Order Requiring Special Report [Dkt. No. 37]. Dkt. No. 43. The Court ordered Defendants to file their Special Report and answer or dispositive motion on or before September 16, 2024. *Id.* at 2. Defendants did not file their Special Report until December 1, 2025, after the Court ordered Defendants to show cause for their failure to comply with the Court's July 17, 2024 Order. *See* Dkt. Nos. 50, 54. On December 5, 2025, Defendants filed the instant Motion. Dkt. No. 57. The Motion, despite being filed pursuant to Rule 12(b)(6), relies heavily on the Special Report. *See,*

*e.g.,* Dkt. No. 57 at 6 (citing to the Special Report to support the exhaustion argument), 9 (citing to Cathey's medical record to support the contention that Cathey failed to state a claim for deliberate indifference).

Because Defendants' Rule 12(b)(6) Motion did not seek relief, in the alternative, under Rule 56, on April 28, 2026, the Court provided notice it "may convert Defendants' Motion to Dismiss into a Motion for Summary Judgment, pursuant to Rule 12(d)."[1] Dkt. No. 60. The Court advised Cathey that he may "present all the material that is pertinent to the motion" within twenty-one (21) days of the Order. *Id.* On June 18, 2026, Cathey filed a fourteen (14) page response but did not provide any evidentiary materials. *See* Dkt. No. 68.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court must "'view the evidence and the reasonable inferences to be drawn from the evidence in the light most favorable to the nonmoving party.'" *Cronick v. Pryor*, 99 F.4th 1262, 1267 (10th Cir. 2024) (quoting *Simpson v. Little*, 16 F.4th 1353, 1360 (10th Cir. 2021)).

When a defendant asserts an affirmative defense in a motion for summary judgment, the defendant "'must demonstrate that no disputed material fact exists regarding the affirmative

[1] To raise an exhaustion defense based on materials in a Special Report in a motion that otherwise only challenges the sufficiency of the allegations in the complaint, a defendant should style the motion in the alternative, such as "Motion to Dismiss under Rule 12(b)(6) or, alternatively, Motion for Summary Judgment under Rule 56," and should address both legal standards. *See Jones v. Cannon*, 589 F. App'x 849, 854 (10th Cir. 2014) (citing *Marquez v. Cable One, Inc.*, 463 F.3d 1118, 1121 (10th Cir. 2006)); *Cordova v. Dowling*, 534 F. App'x 751, 752 (10th Cir. 2013).

defense asserted' when the evidence is viewed in the light most favorable to the plaintiff." *Kramer v. Wasatch Cnty. Sheriff's Off.*, 743 F.3d 726, 746 (10th Cir. 2014) (quoting *Helm v. Kansas*, 656 F.3d 1277, 1284 (10th Cir. 2011)). "If the defendant meets this initial burden, the plaintiff must then demonstrate with specificity the existence of a disputed material fact." *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997). If the plaintiff fails to make this showing, "the affirmative defense bars his claim, and the defendant is then entitled to summary judgment as a matter of law." *Id.*

Having reviewed the parties' briefs along with the evidentiary record available at this juncture, the Court concludes neither party has submitted sufficient evidentiary materials to support a summary judgment ruling at this time. For example, as noted, Defendants sought dismissal based on exhaustion but failed to provide any record of the grievances Cathey *did* file and, despite Cathey's Second Amended Complaint containing five (5) claims, Defendants' affidavit in support of their exhaustion argument summarily states, "Cathey has not exhausted his administrative remedies regarding this issue" without detailing what "this issue" is. *See* Dkt. No. 54-5. This evidence does not "demonstrate that no disputed material fact exists regarding the affirmative defense asserted." *Kramer*, 743 F.3d at 746 (internal quotation marks omitted). Further, Defendants fail to provide any affidavits or meaningful analysis regarding evidence with respect to the deliberate indifference to medical needs claims. *See* Dkt. No. 57 at 8-10.[2] Likewise, Cathey failed to provide any additional evidentiary materials beyond what is contained in his Second Amended Complaint. *See* Dkt. Nos. 23 and 68. To defeat a properly supported motion for summary judgment, a plaintiff "must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S.

[2] The Court's citations refer to the CM/ECF header pagination.

574, 586 (1986). The "nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (emphasis in original) (quoting Fed. R. Civ. P. 56(e).

Based on both parties' shortcomings, the Court declines to construe the Motion as a motion for summary judgment. Instead, the Court will analyze the sufficiency of the Second Amended Complaint's allegations consistent with Federal Rule of Civil Procedure 12(b)(6).

**II. Motion to Dismiss Standard of Review**

Dismissal of claims under Rule 12(b)(6) is appropriate if the facts alleged in the complaint fail to state a claim on which relief may be granted.[3] To withstand a Rule 12(b)(6) motion, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible if the facts alleged "raise a reasonable expectation that discovery will reveal evidence" of the conduct necessary to establish plaintiff's claim. *Id.* at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). The complaint need not contain "detailed factual allegations," but it must contain "more than labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action." *Bell Atl. Corp.*, 550 U.S. at 555. When considering the sufficiency of the complaint, a court must accept as true all the well-pleaded

[3] Throughout the Motion, Defendants rely on the Special Report to support their arguments. *See, e.g.,* Dkt. No. 57 at 6, 9. "A [Special] Report may not be used, however, to resolve a bona fide factual dispute, or to determine whether a complaint states a plausible claim for relief." *Martin v. Schnurr*, Case No. 26-3005, 2025 WL 1194984, at *4 (10th Cir. May 1, 2026) (unpublished) (internal quotations and citations omitted). "[U]nless the court uses a [Special] Report to determine whether a complaint is frivolous, it may consider the Report only to determine whether to enter summary judgment." *Id.* Defendants' reliance on the Special Report at the 12(b)(6) stage is unwarranted, and the Court will not consider the Special Report in assessing the sufficiency of Cathey's Second Amended Complaint and the Defendants' Motion. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) ("Generally, the sufficiency of a complaint must rest on its contents alone.").

factual allegations and construe them in the plaintiff's favor. *Id.* But the court may disregard legal conclusions or conclusory statements devoid of factual support. *Id.*; *Iqbal*, 556 U.S. at 678.

Further, when a plaintiff appears without counsel, the court must liberally construe the complaint. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But even self-represented litigants bear the burden to "alleg[e] sufficient facts on which a recognized legal claim could be based." *Id.* And the rule of liberal construction neither requires nor permits a court to assume the role of the unrepresented litigant's advocate by "supply[ing] additional factual allegations to round out a plaintiff's complaint or construct[ing] a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1174-75 (10th Cir. 1997).

At the motion-to-dismiss stage, a "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable." *Straub v. BNSF Ry. Co.*, 909 F.3d 1280, 1287 (10th Cir. 2018) (quoting *Bell Atl. Corp.*, 550 U.S. at 556). Nonetheless, dismissal is appropriate "when the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp.*, 550 U.S. at 558.

## III. Background

At the time of filing his Second Amended Complaint, Cathey was a state prisoner incarcerated at Oklahoma State Penitentiary ("OSP"). Dkt. No. 23 at 2. Cathey names five (5) Defendants: Leisha von Everett, Kim Hall, Bruce Sharp, Cheri Atkinson and Corder. *Id.* at 3-4.[4] Cathey alleges that he has a rare condition, Zenker's Diverticulum ("Zenker's"). *Id.* at 5, 13. Cathey alleges, due to this condition, he has "a pouch that grows on the esophagus and collects

[4] Cathey does not allege he is suing any of the Defendants in their official capacities. *See* Dkt. No. 23. Cathey does not identify any municipal policy or custom either. *See id.; see also Walker v. City of Orem*, 451 F.3d 1139, 1152 (10th Cir. 2006). Therefore, to the extent Cathey intended to sue the Defendants in their official capacities, these claims are dismissed for failing to state a claim upon which relief may be granted.

food and drink, and in the last several years [his] has taken over much of the space in [his] throat. The mixture becomes fetid and acidic, causing constant nasty regurgitation[.] . . . These regurgitations' high acid is what is rapidly rotting [his] teeth, which are almost all gone over the last several years." *Id.* at 13.

As a result of the wear on his teeth, Cathey alleges he has sought out dental crowns to repair his remaining, seven (7), rotting teeth. *See* Dkt. No. 23 at 7-9. However, both dentists at OSP, Everett and Sharp, have refused to provide the crowns. *See id.* at 5-6, 8, 11-12. Cathey alleges Everett refused to provide the crowns based on a fraudulent Oklahoma Department of Corrections' ("ODOC") Policy [*see id.* at 7-9] and Sharp, without Cathey's medical consent, cemented his old crown instead of providing him a new one and refused to provide him the crown [*see id.* at 11-12]. Cathey alleges the Correctional Health Services Administrator at OSP, Hall, denied Cathey dental care by relying on Everett's forged DOC policy and "stonewalled [him] on several medical issues." *Id.* at 5, 9.

Cathey further alleges the Chief Medical Officer at ODOC, Atkinson, is charged with reviewing grievance appeals and she "perpetuated the malice and subterfuge of Everett and Hall" by relying on Everett's purportedly forged ODOC Policy to deny his grievance appeal. Dkt. No. 23 at 6, 10. Finally, Cathey asserts a claim against Corder, OSP's medical transport officer, for denying him medical care by interfering with Cathey's medical appointments by tricking him into signing a waiver on one occasion and by refusing to take him to an appointment on another occasion. *Id.* at 13-15.

As mentioned, Defendants move to dismiss the Second Amended Complaint, pursuant to Rule 12(b)(6), arguing: (i) Cathey has not exhausted his administrative remedies concerning his claim against Corder and his retaliation claims; (ii) fails to state a claim for deliberate indifference

to medical needs as it relates to his dental care and treatment of Zenker's Diverticulum; (iii) his request for injunctive relief must be denied; (iv) Atkinson did not personally participate in any alleged constitutional violation; and (v) the Defendants are entitled to qualified immunity. *See* Dkt. No. 57. The Court will now address each of Cathey's claims.

## IV. Claim Against Atkinson

Defendants argue Cathey's claim against Atkinson fails to state a cognizable claim because Atkinson's only participation was denying his appeal. Dkt. No. 57 at 10-12. The United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") has held, "[a] § 1983 claim requires personal involvement in the alleged constitutional violation" and the "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." *Stewart v. Beach*, 701 F.3d 1322, 1328 (10th Cir. 2012) (internal quotation marks omitted). "Whatever knowledge [Atkinson] may have had when [s]he denied the appeal, [her] only involvement was to deny the grievance appeal, which is insufficient for § 1983 liability." *Id.*

Here, the only personal involvement Cathey alleges is that Atkinson denied his appeal. Dkt. No. 23 at 6, 10. In accordance with *Stewart*, this denial without more is insufficient to state a claim against Atkinson. Therefore, dismissal of Cathey's claim against Atkinson is appropriate; Cathey failed to state a claim against Atkinson upon which relief may be granted.

## V. Claim Against Everett

To state a plausible Eighth Amendment violation based on the failure to provide medical care, a plaintiff must allege facts evidencing "deliberate indifference to [his] serious illness or injury." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To satisfy the deliberate-indifference standard, a plaintiff must plausibly allege: (1) a harm that was objectively "sufficiently serious,"

*Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006), and (2) that the defendant subjectively "kn[e]w[] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Importantly, "the Eighth Amendment protects inmates from the infliction of punishment—it does not give rise to claims sounding in negligence or medical malpractice." *Sherman v. Klenke*, 653 F. App'x 580, 586 (10th Cir. 2016)[5] (internal quotations and citations omitted). "Indeed, even if a prison official's actions fell below a reasonable standard of care, the negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Id.* at 587 (internal quotations and citations omitted).

First, as noted above, the Court cannot consider Cathey's medical records provided by the Defendants [Dkt. No. 54-2] to adjudicate the Defendants' Rule 12(b)(6) Motion. The Court is constrained to the allegations within the Second Amended Complaint. *Gee,* 627 F.3d at 1186.

Cathey alleges Everett refused to provide dental care, including crowns to salvage Cathey's seven (7) remaining teeth, until Cathey agreed to allow Everett to extract five (5) teeth. Dkt. No. 23 at 7. By refusing to provide Cathey with dental care, teeth and parts of teeth have fallen out due to lack of medical attention and Cathey's pain continued. *Id.* at 5, 7. Everett's refusal to provide dental care resulted in "gross pathosis of the oral cavity that needs immediate attention" and Everett failed to provide "routine and emergency dental care." Dkt. No. 23 at 8.

A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)

[5] The Court cites all unpublished decisions herein as persuasive authority. Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

(quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)). Liberally construing Cathey's allegations in his favor, the Court concludes the alleged dental concerns are sufficiently serious. *See Ramos v. Lamm*, 639 F.2d 559, 576 (10th Cir. 1980) ("[D]ental care is one of the most important medical needs of inmates.").

The subjective component requires a plaintiff to demonstrate that officials acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (internal quotation and citation omitted). Under this standard, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 1227) (quoting *Farmer*, 511 U.S. at 837). Defendants rely only on the medical records, which the Court cannot consider, and ODOC's policy to support their position that Cathey cannot satisfy the subjective component. Dkt. 57 at 8-9. However, the Tenth Circuit has explained:

> A defendant's contemporaneous reliance on correctional policy to take, or decline to take, a course of action indeed bears on the question of deliberate indifference. That standard informs the requisite intent with which a defendant behaves, so the avowed reason for a defendant's conduct is naturally relevant to this analysis. *See Arenas v. Calhoun*, 922 F.3d 616, 626 (5th Cir. 2019) ("Although an officer's compliance with prison policy by no means immunizes his actions from liability under § 1983, it militates against a finding of deliberate indifference."); *Ford v. Anderson County*, 102 F.4th 292, 312 n.10 (5th Cir. 2024) ("If it is the case that Nurse Green delayed sending Newsome to the hospital because of the PR bond policy, the fact that Green acted pursuant to municipal policy may aid in Green's defense.").
>
> But although compliance with policy bears on a defendant's state of mind, it is not dispositive because correctional policy does not define the rights and obligations enshrined in the Constitution.

*Johnson v. Sanders*, 121 F. 4th 80, 91 (10th Cir. 2024). Here, Cathey alleges Everett was aware of his Zenker's condition causing his teeth to "rapidly rot" and "out of retribution did nothing to relieve [his] pain or tooth loss." Dkt. 23 at 5. At this stage of the litigation, construing Cathey's

allegations liberally and in his favor, Cathey has alleged Everett acted with a sufficiently culpable state of mind. And at this stage of the litigation, the ODOC policy, without more, cannot immunize Everett from § 1983 liability. Therefore, the Court finds Cathey has stated a claim against Everett for deliberate indifference to a serious medical need upon which relief may be granted; dismissal of this claim is not warranted.

## VI. Claims Against Hall

The Court understands Cathey to be asserting a deliberate indifference to medical needs claim and retaliation claim against Hall. *See* Dkt. 23 at 5, 9. The Court begins with the retaliation claim.

Cathey alleges, "[s]ince Hall has been named in this lawsuit, she has stonewalled me on several medical issues." *Id.* at 9. "Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights . . . . [A]n inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Fogle v. Pierson*, 435 F.3d 1252, 1263–64 (10th Cir. 2006) (emphasis in original) (quoting *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)). To prove Hall's liability for retaliation, Cathey is required to show:

> (1) that [he] was engaged in a constitutionally protected activity; (2) that the defendant's actions caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to [his] exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007). But "'[a] plaintiff's subjective beliefs about why the [defendant] took action, without facts to back up those beliefs, are not sufficient' to establish retaliatory motive." *Rhodes v. Shannon*, No. 23-8026, 2024 WL 79964, at *3 (10th Cir. 2024) (unpublished) (quoting *Nielander v. Bd. of Cnty. Comm'rs*, 582 F.3d 1155,

1165 (10th Cir. 2009)); *see also Frazier v. Dubois*, 922 F.2d 560, 562 n.1 (10th Cir. 1990) ("Mere allegations of constitutional retaliation will not suffice.").

Defendants do not address the elements of this claim but, instead, rely on their exhaustion argument. *See* Dkt. 57 at 6. "[F]ailure to exhaust is an affirmative defense under the [Prison Litigation Reform Act ("PLRA")], and [] inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007); *see also Revilla v. Glanz*, 8 F. Supp. 3d 1336, 1345 (N.D. Okla. 2014) ("dismissal is not appropriate for a failure to plead such exhaustion."). "The burden of proof for the exhaustion of administrative remedies in a suit governed by the PLRA lies with the defendant." *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007). "Dismissal under § 1997e(a) for failure to exhaust administrative remedies therefore cannot usually be made on pleadings without proof." *Culp v. Williams*, No. 10–CV–886–CMA, 2011 WL 1597953, at *2 (D. Colo. Apr. 6, 2011) (unpublished) (citations omitted).

Given the Court will not consider the Special Report at the 12(b)(6) stage, the Court cannot resolve Defendants' exhaustion argument based upon only the Second Amended Complaint's allegations. For these reasons, the Court denies Defendants' Motion to Dismiss with respect to Cathey's claims against Corder. Nevertheless, pursuant to the Court's § 1915(e)(2)[6] obligations, the Court will address whether Cathey states a claim for retaliation against Hall.

It is undisputed Cathey engaged in constitutionally protected activity by filing the instant suit. However, Cathey fails to include sufficient allegations to satisfy all of the *Shero* elements.

[6] Because this Court granted Cathey leave to proceed *in forma pauperis* [Dkt. No. 8], this Court has a continuing obligation to dismiss this action "at any time" if the complaint—"(i) is frivolous or malicious, (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

Cathey does not show that the challenged actions would not have occurred "but for" a retaliatory motive. *Baughman v. Saffle*, 24 F. App'x 845, 848 (10th Cir. 2001). He merely offers conclusory statements based upon his personal belief that he is the victim of retaliation. *Nielander*, 582 F.3d at 1165 ("A plaintiff's subjective beliefs about why the [defendant] took action, without facts to back up those beliefs, are not sufficient[.]"); *see also* Dkt. No. 23 at 9. Further, according to his own allegations, many inmates receive similar treatment from Hall. *See* Dkt. No. 23 at 9 ("At OSP, [the word 'scheduled'] often means the inmate will never receive examination or treatment."). For these reasons, the Court concludes Cathey fails to state any plausible retaliation claim against Hall, and dismissal of this claim is warranted.

Turning to the deliberate indifference to medical needs claim, the Court already concluded Cathey's alleged injuries, including his rotting and lost teeth, are sufficiently serious. *See supra; see also* Dkt. 23 at 9 (noting his teeth have rotted and fallen out due to Hall's conduct). Furthermore, as noted previously, reliance on the ODOC policy alone, at this juncture, does not shield Hall from liability. *See supra.* Cathey's Second Amended Complaint establishes Hall was aware of his dental concerns. *See* Dkt. No. 23 at 26. Also, Cathey alleges Hall delayed his dental care for "four years[.]" *See id; see also id.* at 9. These allegations are sufficient to state a claim for relief upon which relief may be granted. *See Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) ("A three-week delay in dental care, coupled with knowledge of the inmate-patient's suffering, can support a finding of an Eighth Amendment violation under section 1983."); *see also Stepnay v. Goff*, 164 F. App'x 767, 771 (10th Cir. 2006) ("Assuming the other elements are met, delay in providing [plaintiff's] follow-up medical care may constitute a constitutional violation.").

## VII. Claim Against Sharp

Cathey alleges Bruce Sharp, also a dentist at OSP, performed dental procedures without his consent, refused to provide him with a crown and failed to treat an abscessed tooth. Dkt. No. 23 at 6, 11-12.

Concerning Sharp's alleged treatment of Cathey without informed consent [Dkt. No. 23 at 11] and failing to treat Cathey's abscessed tooth [*id.* at 11-12], these claims sound in negligence and/or malpractice which will not support a claim for deliberate indifference. *See Estelle*, 429 U.S. at 106 (holding that "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") Therefore, these claims will be dismissed for failure to state a claim upon which relief may be granted.

Concerning Sharp's failure to provide Cathey with a crown, Cathey alleges Sharp originally agreed to provide Cathey with a crown but later refused. *See id.* at 6, 11-12. Cathey alleges Sharp "knew crowns were available through the DOC, but did not want to go to the trouble of giving me one." *Id.* at 12. Cathey further alleges Sharp's inaction "caused [him] additional pain and suffering[.]" *Id.* At this stage of the litigation, construing Cathey's allegations in his favor, the Court concludes Cathey has stated a claim against Sharp for deliberate indifference. Therefore, dismissal of this claim, at this juncture, is unwarranted.

## VIII. Claim Against Corder

As noted above, Cathey alleges Corder interfered with Cathey's access to medical appointments. Dkt. No. 23 at 13-15. The only argument raised in response to these allegations by Defendants is that Cathey did not properly exhaust this claim. *See* Dkt. No. 57 at 6. The Court

has already rejected this contention at the Rule 12(b)(6) stage. *See supra.*

Nevertheless, pursuant to the Court's § 1915(e)(2) obligations, the Court will address whether Cathey states a claim against Corder. The Court understands Cathey to be asserting a deliberate indifference claim against Corder for interfering with Cathey's access to medical care. *See* Dkt. No. 23 at 13-15. The Tenth Circuit recognizes, "when prison officials prevent an inmate from receiving treatment or deny him access to medical personnel capable of evaluating the need for treatment," they may be liable for deliberate indifference. *Sealock*, 218 F.3d at 1211. "In other words, a jail official's delay or refusal to obtain medical care for an inmate may constitute deliberate indifference." *Paugh v. Uintah Cnty.*, 47 F.4th 1139, 1154 (10th Cir. 2022); *see also Estelle*, 429 U.S. at 104–05 (explaining that deliberate indifference may be manifested "by prison guards in intentionally denying or delaying access to medical care").

The Court concludes Cathey's Zenker's condition and heart conditions are sufficiently serious to satisfy the objective prong; Cathey alleges he had an appointment with a GI Specialist and a cardiologist. Dkt. No. 23 at 13-14; *see also Sealock*, 218 F.3d at 1209 ("A medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment[.]"). Furthermore, Cathey alleges Corder's actions have resulted in him being unable to obtain treatment for his medical conditions and resulted in "much dental pain and suffering." *Id.* at 14. Liberally construing Cathey's allegations in his favor, Cathey's allegations against Corder are sufficient to survive Rule 12(b)(6) dismissal, and this claim may proceed.

## IX. Qualified Immunity

Defendants contend they are entitled to qualified immunity. Dkt. No. 57 at 14. "The Tenth Circuit provides the following guidance concerning a qualified immunity defense at the motion to dismiss stage:

> [T]o survive a motion to dismiss based on qualified immunity, a plaintiff "must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights, and that those rights were clearly established at the time." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008).
>
> But to trigger the plaintiff's two-part burden, a defendant must first "adequately present" the qualified-immunity defense. *Tillmon v. Douglas County*, 817 F. App'x 586, 589 (10th Cir. 2020); *see Gomez v. Toledo*, 446 U.S. 635, 640–41 (1980) (holding that "the burden of pleading" a qualified-immunity defense "rests with the defendant"). And to adequately present the defense, the defendant must not only explicitly raise it, *see Montoya v. Vigil*, 898 F.3d 1056, 1063–64 (10th Cir. 2018), but must also plead the defense beyond a "perfunctory assertion," *Tillmon*, 817 F. App'x at 590. Accordingly, where a defendant makes only a bare assertion of qualified immunity, the plaintiff bears no burden to satisfy the ordinary two-prong test. *See id.*; *A Brighter Day, Inc. v. Barnes*, 860 F. App'x 569, 575 (10th Cir. 2021) (holding that a defendant's "qualified-immunity argument was underdeveloped" where it "contain[ed] mostly general legal statements and empty platitudes").

*Berryman v. Niceta*, 143 F.4th 1134, 1140-41 (10th Cir. 2025). Here, all the Defendants offer is, "Plaintiff can't meet his burden of establishing that Defendants' conduct was in any way unconstitutional or that the law was clearly established that Defendants' conduct was unconstitutional. Defendants are therefore entitled to qualified immunity." Dkt. 57 at 14. This argument falls short of adequately presenting a qualified immunity defense. The Defendants have only made a bare assertion of qualified immunity rendering Cathey without any obligation to satisfy the two-prong test at this juncture. For these reasons, the Court declines to grant the Defendants' Motion based on qualified immunity.

## CONCLUSION

As outlined above, the Court fully considered all of Cathey's claims against Defendants Everett, Hall, Atkinson, Corder and Sharp. The Court briefly summarizes the disposition of each claim:

1. Cathey states a claim against Everett, in her individual capacity, for deliberate indifference to his medical needs. The Court dismisses any claims against Everett in her official capacity.

2. Cathey states a claim against Hall, in her individual capacity, for deliberate indifference to his medical needs. The Court dismisses Cathey's retaliation claim and official capacity claims against Hall.

3. Cathey states a claim against Sharp, in his individual capacity, for deliberate indifference to his medical needs as it relates to Sharp's refusal to provide a crown. The Court dismisses Cathey's claims regarding lack of informed consent, lack of treatment for an abscessed tooth and official capacity claims against Sharp.

4. Cathey states a claim against Corder, in his individual capacity, for deliberate indifference to his medical needs. The Court dismisses any claims against Corder in his official capacity.

5. The Court dismisses Cathey's claims against Atkinson, in both her individual and official capacities.

Furthermore, the Court provides the following guidance to all parties:

While the Court declined to construe Defendants' Motion to Dismiss as a motion for summary judgment at this juncture, Defendants are not prohibited from filing a properly supported motion for summary judgment, in conformity with Federal Rule of Civil Procedure Rule 56, at the conclusion of the discovery period.

Further, Cathey is advised, pursuant to Federal Rule of Civil Procedure 56(c), if a motion for summary judgment is subsequently filed and he wishes to dispute the Defendants' factual assertions, he must do so by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A). If Cathey fails to properly address the Defendants' assertions of fact, the Court may consider the facts undisputed for purposes of the motion or grant summary judgment if the motion and supporting materials show that movant is entitled to it. Fed. R. Civ. P. 56(e).

As a courtesy, the Court will provide Cathey with the following: (1) a copy of Federal

Rule of Civil Procedure 56; (2) a copy of Local Civil Rule 56.1; and (3) the Motions for Summary Judgment excerpt from the Federal Bar Association's Handbook for Pro Se Litigants.

IT IS THEREFORE ORDERED that Defendants' Everett, Hall, Atkinson, Corder and Sharp's Motion to Dismiss [Dkt. No. 57] is granted in part and denied in part.

IT IS FURTHER ORDERED that Cathey may proceed on the following claims, as alleged in the Second Amended Complaint: (1) deliberate indifference to medical needs claim against Everett, in her individual capacity; (2) deliberate indifference to medical needs claim against Hall, in her individual capacity; (3) deliberate indifference to medical needs claim against Sharp, in his individual capacity; and (4) deliberate indifference to medical needs claim against Corder, in his official capacity.

IT IS FURTHER ORDER that the Second Amended Complaint is dismissed, in part, as follows: (1) all official capacity claims against Everett, Hall, Atkinson, Corder and Sharp; and (2) all claims against Atkinson.

IT IS FURTHER ORDERED that Defendants Everett, Hall, Sharp and Corder shall file their answers to Cathey's Second Amended Complaint within fourteen (14) days of the date of this Order.

IT IS FURTHER ORDERED that the Clerk of Court shall terminate the following party defendant: Cheri Atkinson.

IT IS FURTHER ORDERED that the Clerk of Court shall send to Cathey the following: (1) a copy of Federal Rule of Civil Procedure 56; (2) a copy of Local Civil Rule 56.1; and (3) the Motions for Summary Judgment excerpt from the Federal Bar Association's Handbook for Pro Se Litigants.

Dated this 28th day of September, 2026.

JOHN F. HEIL, III
CHIEF UNITED STATES DISTRICT JUDGE